UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ROBYN G. WALDEN,

    Plaintiff,

v.                                                                  Case No. 6:17-cv-531-ORL-37DCI

JASON WALDEN, as Personal Representative of the Estate of John W. Walden and as Co-Trustee of the John W. Walden Trust; TIFFANY WALDEN, individually and as Co-Trustee of the John W. Walden Trust; ANDREW ZORBIS; MICHAEL SOWARDS; DEBORAH SOWARDS; ERIC JONES; MARGARET MANNING; MONTE VISTA RANCH, L.C.; WALDEN ESTATE, LLLP; WALDEN ESTATE MANAGEMENT, LLC; TIFFANY'S BUILDING DESIGN SYSTEMS, LLC; TIFFANY'S HOMES, LLC; HARMONY REAL ESTATE HOLDINGS, LLC; TI MORTGAGE COMPANY; TI MORTGAGE COMPANY; MVR MANAGEMENT, LLC; REGIONS, LLC; EAGLE MOUNTAIN PROPERTIES OF UTAH, LLC; EAGLE MOUNTAIN PROPERTIES, LLC; COLONIAL PARK @EAGLE MOUNTAIN, LLC; CEDAR VALLEY LAND AND RANCH LLC; CEDAR VALLEY WATER COMPANY, LLC, and JOHN DOES 1-10,

    Defendants.
_____

## **<u>ORDER</u>**

Following the death of real estate developer John W. Walden ("**JWW**") on

January 14, 2017, his former putative "spouse"—Plaintiff Robyn G. Walden ("**Plaintiff**")—initiated this RICO action against seven individual defendants who were family, friends, or business associates of JWW ("**Individual Defendants**"), fifteen business entities ("**Business Defendants**"), and ten John Does. (Doc. 1.) The Complaint—which consists of 133 pages, 756 paragraphs, fifty-nine counts,[1] a transactions timeline ("**Timeline**"), and forty-three exhibits—sets forth claims that allegedly:

> arise out of an unusual divorce proceeding [("**Divorce Case**")] coupled with a series of calculated fraudulent transactions, schemes, and artifices that [JWW] and his cohorts implemented [("**Scheme**")] in [order to] divest [Plaintiff] of all assets she acquired during their decade-long marriage [("**Assets**")] and leave [Plaintiff] completely destitute and "homeless under a bridge."

(*Id.* at ¶ 2.) Defendants and JWW's alleged actions in relation to the Scheme—including theft, forgery, perjury, mail fraud, wire fraud, money laundering, and fraud upon the courts—commenced before the Divorce Case and "continue to the present."[2] (*Id.* ¶¶ 5, 6.)

Except for Tiffany Walden—who is a resident of Utah County, Utah—the Individual Defendants allegedly reside in Brevard County, Florida. The tables below identify the Defendants and the Counts asserted against each of them:

---

[1] Plaintiff's fifty-nine counts—which are somewhat repetitive—are based on the following laws: (1) 18 U.S.C. §§ 1962(c) and (d); (2) Florida Statutes § 894; (3) Florida Statutes §§ 726.105(1)(a) & (b), 726.106, and 726.108; and (4) Florida law of Rescission, Equitable Accounting, "Alter Ego Liability," Indemnification, Defamation, Civil Conspiracy, and Aiding and Abetting Fraud. (Doc. 1)

[2] The Timeline improperly adds new facts in single-spaced, bullet-point paragraphs (*see* Doc. 1-1), which allegedly show that, "within a short period just prior to the Divorce [Case]," JWW, Defendants, and others, "engaged in a strategic and concerted effort to divest [Plaintiff] of all her assets" (Doc. 1, ¶ 10).

| Individual Defendants | Acronym | Counts |
|---|---|---|
| Jason Walden ("**JW**") as personal representative ("**PR**") of the Estate of John W. Walden ("**Estate**") | **JWPR** | 1, 2, 3, 50, 53, 55, 57, 58, 59 |
| JW as co-trustee of the John W. Walden Trust ("**Walden Trust**") | **JWCT** | 29, 30, 31, 57, 58, 59 |
| Tiffany Walden, individually | **TW** | 7, 8, 9, 57, 58, 59 |
| Tiffany Walden, as co-trustee of the Walden Trust | **TWCT** | 32, 33, 34, 57, 58, 59 |
| Andrew Zorbis | **AZ** | 4, 5, 6, 23, 24, 25, 54, 56, 57, 58, 59 |
| Eric Jones | **EJ** | 13, 14, 15, 23, 24, 25, 54, 56, 57, 58, 59 |
| Michael Sowards ("**MW**") & Deborah Sowards ("**DW**") | **Sowards** | 10, 11, 12, 57, 58, 59 |
| Margaret Manning | **MM** | 16, 17, 18, 57, 58, 59 |

| Business Defendants | Acronyms | Counts |
|---|---|---|
| Tiffany's Building Design Systems, LLC (UT) | **TBDS** | 19, 20, 21, 22, 57, 58, 59 |
| Tiffany's Homes, LLC (UT) | **THLC** | 19, 41, 42, 43, 57, 58, 59 |
| Monte Vista Ranch, L.C. (UT) | **MVRLC** | 19, 44, 45, 46, 52 57, 58, 59 |
| MVR Management, LLC (UT) | **MVRM** | 19, 26, 27, 28, 57, 58, 59 |
| Regions, LLC (UT) | **Regions** | 19, 57, 58, 59 |
| Eagle Mountain Properties of Utah, LLC (UT) | **EMPUL** | 19, 57, 58, 59 |
| Eagle Mountain Properties, L.C. (UT) | **EMPLC** | 19, 57, 58, 59 |
| Colonial Park @ Eagle Mountain, LLC (UT) | **Colonial** | 19, 57, 58, 59 |
| Cedar Valley Land and Ranch, LLC (UT) | **CVLR** | 19, 57, 58, 59 |
| Harmony Real Estate Holdings, LLC (UT) | **Harmony** | 19, 57, 58, 59 |
| TI Mortgage Company (UT) | **TI Utah** | 19, 57, 58, 59 |
| TI Mortgage Company of Florida (FL) | **TI Florida** | 19, 57, 58, 59 |
| Walden Estate, LLP (FL) | **WELP** | 19, 35, 36, 37, 57, 58, 59 |
| Walden Estate Management, LLC (FL) | **WEML** | 19, 38, 39, 40, 57, 58, 59 |
| Cedar Valley Water (FL) | **CVW** | 19, 47, 48, 49, 51, 57, 58, 59 |

WELP, WEML, CVW, and TI Florida ("**Florida Defendants**") are business entities organized under Florida law (*id*. ¶¶46, 47, 52, 59), and the remaining Business Defendants

are organized under Utah law ("**Utah Defendants**"). (*Id*. ¶¶ 45, 48–51, 53–58.)

All of the Defendants moved to dismiss the Complaint. Attorney David J. Volk ("**Volk**") filed two motions—one on behalf of the Utah Defendants (Doc. 21 ("**Utah Defendants' Motion**")) and one on behalf of the Florida Defendants, TW, TWCT, AV, EJ, MM, and the Sowards ("**Volk Defendants**"). (Doc. 22.) Represented by different counsel, JWTC and JWPR ("**JW Defendants**") also filed two motions to dismiss. (Doc. 38; Doc. 66 ("**Rooker-Feldman Motion**").) These motions and others are fully-briefed and were addressed at a hearing on October 18, 2017 ("**Hearing**"). (Doc. 87.) This Order briefly memorializes the rulings issued during the Hearing.

## DISCUSSION

**I.   The Utah Defendants' Motion**

The Utah Defendants argued that the Court should dismiss all claims against them because: (1) "the Utah Defendants are nonresidents of Florida and have had no purposeful contacts with [Florida]" ("**Personal Jurisdiction Argument**"); and (2) Plaintiff served "all of the Utah Defendants" with a single Summons and Complaint, which was delivered to TW "while she was in Florida on personal business" regarding the Estate ("**Service Argument**"). (*See* Doc. 21.) In support, the Utah Defendants filed TW's conclusory affidavit.[3] (Doc. 21-1 ("**TW Affidavit**").)

At the Hearing, the Court rejected the Personal Jurisdiction Argument because the Utah Defendants did not meet their initial burden to produce evidence refuting the

---

[3] Without elaboration, TW avers that the TW Affidavit is based on her "personal knowledge." (Doc. 21-1, ¶ 1.)

-4-

jurisdictional allegations of the Complaint or supporting their contention that they are "nonresidents" of Florida. To the contrary, the Complaint indicates—and counsel for the Utah Defendants confirmed during the Hearing—that members of some of the Utah Defendants include Florida residents Plaintiff, AZ, and JWW. Nonetheless, the TW Affidavit is fatally deficient in its failure to address allegations that members of the Utah Defendants were residents of Florida and that JWW—a Florida resident—managed the Utah Defendants from Florida.[4] (*See id.* ¶¶ 5, 6, 8, 13, 14, 15.)

Although the Court rejected the Personal Jurisdiction Argument, it still granted the Utah Defendants' Motion in part based on the Service Argument. Specifically, the Court quashed service as to the Utah Defendants because the Plaintiff failed to serve each of them with Summons as required by Rule 4(b). (*See* Doc. 14.)

## II. The Rooker-Feldman Motion[5]

Defendants argue that the Court should dismiss the Complaint pursuant to

---

[4] The Court notes that instances may exist where it would not be appropriate to exercise personal jurisdiction over a limited liability company solely because it is a "resident" of the forum. *See Goforit Entm't, LLC v. Digimedia.com L.P.*, 513 F. Supp. 2d 1325, 1331 (M.D. Fla. 2007). But that is not what the Court has done here. Rather, the Court determined that, in light of the allegations of the Complaint, the Utah Defendants could not effectively challenge personal jurisdiction without addressing the Florida members and their activities in Florida. *See Organizacion Miss Am. Latina, Inc. v. Urquidi*, No. 17-11479, 2017 WL 4410999, at *2 (11th Cir. 2017) (finding that LLC was a citizen of Texas because its member was a citizen of Texas); *see also Rolling Greens MHP, L.P. v. Comcast SCH Holdings, LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004) ("[L]ike a limited partnership, a limited liability company is a citizen of any state of which a member of the company is a citizen.").

[5] In a Motion to Join (Doc. 74 ("**Joinder Motion**")), and a Notice of Joinder (Doc. 76 ("**Notice**")), the remaining Defendants reiterated and supplemented the arguments set forth in the Rooker-Feldman Motion. Plaintiff filed a single response to the Joinder Motion and Notice. (*See* Doc. 88.)

Rule 12(b)(1) and the Rooker-Feldman Doctrine because: (1) this action "is an impermissible collateral attack" on a final judgment entered against Plaintiff in the Divorce Case;[6] (2) the Indemnification Counts are an "impermissible collateral attack" on a final judgment entered against Plaintiff by the Brevard Court in *Gettings v. Walden*, 05-2014-CA-38009 ("**Gettings Case**"); and (3) all of Plaintiff's claims are—"[t]o one degree or another"—"inextricably intertwined with the matters that have been—or are being—considered in . . . various state court actions." (*See* Doc. 66, pp. 2–7; *see also* Docs. 74, 76.)

Plaintiff countered that the Court should deny the Rooker-Feldman Motion because her claims for damages in this action "are not an attempt to appeal and set aside previous state law judgments." (*See* Doc. 78, pp. 2–9 (noting that the alleged Scheme concerns misconduct outside of the courts, including "theft of corporate documents," dissipation of funds in jointly owned bank accounts, forgery, and conversion).) Plaintiff further notes that the Divorce Case has not "ended." (*See id.* at 10, n.3.)

The Rooker-Feldman Doctrine exhibits "the limited circumstances in which" the U.S. Supreme Court's "appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a [U.S.] district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005).[7] It is a "narrow

---

[6] On June 30, 2015, the Brevard Court entered an order finding that the ten-year marriage of Plaintiff and JWW was "void ab initio as not having been properly solemnized before a Florida notary public." (Doc. 1-10 (providing a copy of the "**Divorce Judgment**").)

[7] The Rooker-Feldman Doctrine arose from two cases—*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

doctrine" that does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id.* at 293. Rather, it applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered *before* the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284 (emphasis added), 292; *see Lance v. Dennis*, 546 U.S. 459, 464 (2006) (warning against conflating the Rooker-Feldman Doctrine with state preclusion law).

In the U.S. Court of Appeals for the Eleventh Circuit, the Rooker-Feldman Doctrine does not apply to federal actions "commenced before *the end* of state proceedings." *See Nicholson v. Shafe*, 558 F.3d 1266, 1274 (11th Cir. 2009) (emphasis added). "[S]tate court proceedings end for Rooker-Feldman purposes" when one of three things happens: (1) "the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved;" (2) neither party seeks further action in the state court proceeding; or (3) the state court has "finally resolved all the federal questions in the litigation, but state law or purely factual questions remain to be litigated." *Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1072 (quoting *Nicholson*, 558 F.3d at 1274).

At the Hearing, Plaintiff's counsel confirmed that Plaintiff still seeks further action in the Divorce Case, and the Divorce Judgment has not been affirmed.[8] Thus, the Court

---

[8] At the Hearing, Defendants' counsel advised that an appeal of the Divorce Judgment was taken but dismissed. He did not represent that such appeal was resolved on the merits.

found that the Rooker-Feldman Doctrine does not apply to the Divorce Case. In contrast, the Rooker Feldman Doctrine does apply to the Gettings Case, which indisputably ended before Plaintiff brought this action. Further, the Indemnity Claims (Counts Fifty-Two, Fifty-Three, and Fifty-Four) constitute an improper challenge to the judgment rendered in the Gettings Case.[9] Thus, the Court granted the Rooker-Feldman Motion as to the Indemnity Claims.[10]

## III. Sufficiency of the Complaint

The Volk and JW Defendants' remaining motions to dismiss challenge the sufficiency of the Complaint under the pleading standards set forth in Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Docs. 22, 38.) Plaintiff filed briefs in response to both motions (*see* Docs. 28 & 59), as well as additional evidence (Doc. 61). Upon consideration of the parties' briefs and their arguments at the Hearing—but not the additional evidence—the Court dismissed the Complaint but provided Plaintiff one additional opportunity to state a claim within the jurisdiction of this Court. In anticipation of repleader, the Court reiterates some of the more patent deficiencies that must be remedied to avoid dismissal of any amended complaint.

---

[9] Plaintiff concedes that her Indemnification Claims "are barred by the *Rooker-Feldman* Doctrine" because granting her relief would require the Court to nullify the Gettings Judgment, which rejected her indemnification claims against third-party defendants JWW, AZ and MVRLC. (Doc. 78, p. 9 n.2.)

[10] The Court reiterates that after the pleading stage, the related state litigation may be considered in relation to state law rules concerning issue and claim preclusion. *See Brown v. R.J. Reynolds Tobacco Co.*, 611 F.3d 1324, 1331 (11th Cir. 2010) (noting that "ordinary preclusion rules govern the effect of" state court findings—not the Rooker-Feldman Doctrine).

-8-

### A. RICO Claims

In Counts One through Eighteen, Plaintiff asserts RICO claims under federal and state law against JWPR,[11] AZ, TW, EJ, MM, and the Sowards ("**RICO Defendants**"). Specifically:

- (a) in Counts One, Four, Seven, Ten, Thirteen, and Sixteen, Plaintiff alleges that the RICO Defendants violated 18 U.S.C. § 1962(c) ("**1962(c) Counts**");

- (b) in Counts Two, Five, Eight, Eleven, Fourteen, and Seventeen, Plaintiff alleges that the RICO Defendants violated 18 U.S.C. § 1962(d) ("**RICO Conspiracy Counts**"); and

- (c) in Counts Three, Six, Nine, Twelve, Fifteen, and Eighteen, Plaintiff alleges that the RICO Defendants violated Florida Statutes, § 895 ("**FL RICO Counts**").

(Doc. 1.)

The RICO Defendants argue that all of these claims should be dismissed because the Plaintiff has not satisfied Rule 9(b) and her claims are implausible. (*See* Doc. 22, 38.) Specifically, they argue that Plaintiff's RICO claims fail because: (1) Plaintiff does not allege that she relied to her detriment on any misrepresentation (Doc. 22 ("**Reliance Argument**")); (2) Plaintiff's mail and wire fraud allegations are too vague in that they do not identify the date, recipient or content of any "fraudulent mailing or wire" (Doc. 38, pp. 4–5 ("**Predicate Acts Argument**")); (3) Plaintiff "fails to adequately plead the existence of an association-in-fact enterprise" (*see id.* at 8–9 ("**Enterprise Argument**"));

---

[11] The claims asserted against JWPR essentially are claims against JWW.

and (4) no "pattern of racketeering" can be found where—as here—the alleged scheme had a single purpose and one victim (*see id.* at 12–13 ("**Pattern Argument**")).[12]

At the Hearing, the Court rejected the Reliance Argument as contrary to law, but found that the remaining arguments have merit. Although Plaintiff's predicate act allegations are not deficient as a whole,[13] significant problems are apparent. For instance, as noted at the Hearing, Plaintiff's allegations concerning MM are particularly weak. Plaintiff alleges that MM was JWW's personal assistant who notarized the marriage certificate and then testified in the Divorce Case in favor of JWW and against Plaintiff. (*See* Doc. 1, ¶¶ 71–75, 95, 101.) Not only are these acts limited and sporadic, but it is not apparent that either alleged act required use of the mail or wire transmissions.[14] In repleading, Plaintiff must take care to state the alleged predicate acts with particularity—

---

[12] The parties' arguments concerning the FL RICO Counts are identical to their arguments under federal law. (*See* Doc. 38, pp. 15–16.) Thus, for purposes of the Complaint, the FL RICO Claims rise or fall with the federal RICO claims.

[13] For instance, Plaintiff identifies specific factual allegations and exhibits to the Complaint that strongly support inferences of use of wire transmissions and the mail, including: (1) JWW's e-mail to a title company instructing it to send (presumably by mail) TW checks that were payable to Plaintiff and JWW jointly; (2) "copies of the checks, deposit, slips, and withdrawal slips" that document TW's removal of $2.2 million from bank accounts that Plaintiff jointly owned with JWW; (3) AZ's use of the Internet to remove Plaintiff from government records concerning the Business Defendants; and (4) documentation of the Sowards' alleged surreptitious wire transfers of funds that were owed to Plaintiff. (*See* Doc. 59.)

[14] At the Hearing, Plaintiff's counsel argued that MM's testimony constituted perjury—not mail or wire fraud. But perjury in a state court proceeding does not appear to be a RICO predicate act. *See Streck v. Peters*, 855 F. Supp. 1156, 1162 (D. Haw. 1994); *see also Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088 n.2 (11th Cir. 2004); *Narumanchi v. Adanti*, 101 F.3d 108 (Table), 1996 WL 123093, *1 (2d Cir. Mar. 20, 1996) (noting that "perjury does not constitute a predicate act"); *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1021–22 (7th Cir. 1992) (noting that perjury is "not included among the list of predicate acts in 18 U.S.C. § 1961(1)"); *United States v. Williams*, 874 F.2d 968, 973 n.17 (5th Cir. 1989) (same).

including by identifying how such acts constitute specific offenses listed in 18 U.S.C. § 1961(1).

Plaintiff also must take care to include sufficient factual allegations to permit reasonable inferences that defendants formed an enterprise and engaged in a pattern of racketeering activity. *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004). As discussed at the Hearing, the allegations in the present Complaint plainly do not satisfy the crucial "continuity element of a pattern of racketeering activity." *See id.* at 1266 (noting that "courts have refused to find a close-ended pattern of racketeering" in cases "where the RICO allegations concern only a single scheme with a discrete goal"); *see also Daedalus Capital LLC v. Vinecombe*, 625 F. App'x 973, 976–77 (11th Cir. 2015) (finding that plaintiffs could not show "close-ended continuity because there [was] only one victim" and a "'single scheme with a discrete goal' connecting the predicate acts—i.e., . . . to divert business proceeds"); *Ferrell v. Durbin*, 311 F. App'x 253, 256 (11th Cir. 2009) (affirming dismissal of RICO claims based on a "single scheme and the existence of only two victims").

### B. State Law Claims

Absent Plaintiff's federal RICO claims, the Court will not exercise supplemental jurisdiction over the remainder of Plaintiffs claims, which are asserted under Florida statutory and common law. Nonetheless, because Plaintiff has been given an opportunity to replead, the Court will note several deficiencies apparent in these claims.

As a whole, the Complaint is not a shotgun pleading. Indeed, the Complaint includes fifty-nine counts because Plaintiff was careful not to lump the Defendants

together for the RICO Claims and for most of the State Law Claims. Counts 19, 55, 56, 57, 58, and 59 are the exception. In Counts 19, 57, 58, and 59, Plaintiff lumped multiple Defendants together in such a manner that the asserted claims are implausible—if not nonsensical.[15] Similarly, Counts 55 and 56 improperly incorporate wholesale all of the "background" allegations—paragraphs 1 through 258—even though most of these paragraphs are unrelated to the asserted defamation claims.[16] (*See* Doc. 1, ¶¶ 726–37.) Finally, the requests for relief set forth in many counts improperly demand relief from Defendants who are not actually named in that count. The result is very confusing and contrary to Rule 8(a)(3).

Counts 50 and 51 also are deficient. In these counts, Plaintiff asserts claims of "Recession [sic]" against CVW and JWPR. (*See* Doc. 1, ¶¶ 680–89.) Fatally, the Complaint does not include factual allegations sufficient to permit reasonable inferences: (1) that

---

[15] For instance, in Count 19, Plaintiff asserts her Alter Ego Claims against all of the Business Defendants. In doing so, Plaintiff parrots Florida law concerning piercing the corporate veil, but her factual allegations are fatally jumbled. Plaintiff alleges that *all* of the Business Defendants are "alter egos" of *all* of the Individual Defendants. Although it is possible that some of the Business Defendants may be the alter egos of some of the Individual Defendants—particularly JWW, AZ, or TW—the alter ego theory is not at all plausible with respect to the remaining Defendants—especially MM and the Sowards who are not alleged to have any interest in the Business Defendants.

[16] Further, the remainder of Plaintiff's allegations are too conclusory to permit a plausible inference that the Defamation Defendants are liable for defaming Plaintiff. (*See* Doc. 1, ¶ 728 (alleging that AZ "told numerous people in Utah and Florida that Robyn stole millions of dollars from [JWW]").) If Plaintiff chooses to replead her defamation claims, she must provide sufficient factual allegations to permit reasonable inferences in her favor concerning all five elements of a defamation claim: (1) publication—specifically the method of publication and the audience; (2) falsity; (3) defendant's knowledge or negligence concerning such falsity; (4) actual damages; and (5) a defamatory statement. *See Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).

Plaintiff has no adequate remedy at law; (2) that she has actually rescinded the Assignment and provided notice of such rescission; and (3) the circumstances were such that Plaintiff had no alternative to executing the Assignment.[17]

## IV. CONCLUSION

Accordingly, as stated at the Hearing, it is **ORDERED AND ADJUDGED** that:

(1) The Amended Motion to Dismiss and for a More Definite Statement as to Individual Defendants and Florida Companies and Incorporated Memorandum of Law (Doc. 22) is **GRANTED**.

(2) Defendant Jason Walden's, as Personal Representative of the Estate of John W. Walden and as Co-Trustee of the John W. Walden Trust, Motion to Dismiss Complaint and Memorandum of Law in Support (Doc. 38) is **GRANTED**.

(3) The Motion to Dismiss Utah Companies (Doc. 21) is **GRANTED IN PART AND DENIED IN PART**.

---

[17] To state a claim for rescission under Florida law, a complaint must include sufficient factual allegations to establish: (1) that a contract was made; (2) the "character of the relationship of the parties" to the contract; (3) the existence of fraud, duress, or some "other ground for rescission or cancellation;" (4) that the plaintiff "has rescinded the contract and notified the other party to the contract of such rescission;" (5) that the plaintiff has returned any consideration or benefit received under the contract; and (6) that the plaintiff "has no adequate remedy at law." *See Ahern v. Fid. Nat'l Title Ins. Co.*, 664 F. Supp. 2d 1224, 1229 (M.D. Fla. 2009). Where duress is the ground for rescission, the plaintiff also must allege that: (1) the plaintiff "involuntarily accepted" defendant's contractual terms; (2) the "circumstances permitted no other alternative;" and (3) such "circumstances were the result of [the defendant's] coercive acts." *See Woodruff v. TRG-Harbour House, Ltd.*, 967 So. 2d 248, 250 (Fla. 3d DCA 2007).

(4) Defendant Jason Walden's, as Personal Representative of the Estate of John W. Walden and as Co-Trustee of the John W. Walden Trust, Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction and Incorporated Memorandum of Law (Doc. 66) is **GRANTED IN PART AND DENIED IN PART**.

(5) Motion of Defendants Tiffany Walden, Andrew Zorbis, and Eric Jones Joining in Co-Defendant's Motion to Dismiss and Incorporated Memorandum of Law (Doc. 74) is **DENIED**.

(6) Plaintiff's Second Unopposed Motion to Extend Deadline to Add Parties or Amend Pleadings (Doc. 92) is **GRANTED**.

(7) The stay of discovery is **LIFTED**.

(8) The Court's Case Management and Scheduling Order (Doc. 43) is **AMENDED** solely with respect to the following deadlines:

   a. Motion to Add Parties or to Amend Pleadings—December 29, 2017;

   b. Mediation—December 3, 2018;

   c. Expert Witness Disclosures

       i. Plaintiff—August 17, 2018

       ii. Defendants—September 18, 2018;

   d. Completion of Discovery—November 5, 2018;

   e. Summary Judgment and *Daubert* Motions—January 4, 2019;

   f. Pre-Trial Meeting—April 1, 2019;

   g. Joint Final Pretrial Statement and Trial Briefs—April 12, 2019;

      h. A Single Motion *in Limine* and any other Motions—March 29, 2019;

      i. Final Pretrial Conference—April 18, 2019, at 10:00 a.m.;

      j. Commencement of the Jury Trial Term—May 6, 2019.

(9) The Complaint (Doc. 1) is **DISMISSED**.

(10) Service of process on the Utah Defendants (Doc. 14) is **QUASHED**.

(11) On or before **November 20, 2017**, Plaintiff may file an Amended Complaint.

(12) On or before **December 1, 2017**, Plaintiff is **DIRECTED** to file proof of service on the Utah Defendants.

**DONE AND ORDERED** in Orlando, Florida, this 20th day of October, 2017.

ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record